John Gibson, Chair Arkansas Emergency Telephone Services Board 1405 West Capitol Avenue, Suite 245 Little Rock, AR 72201
Dear Mr. Gibson:
I am writing in response to your request for my opinion on the following questions:
 1. Based on language of A.C.A. 12-10-300 through 12-10-324, prior to July 1, 2007, were providers of prepaid wireless telephone service required to collect and remit emergency telephone service charges?
 2. If the answer to question 1 is "no," is there a statute of limitations regarding how far back a carrier can reach to request a refund?
RESPONSE
Question 1: Based on language of A.C.A. 12-10-300 through 12-10-324,prior to July 1, 2007, were providers of prepaid wireless telephoneservice required to collect and remit emergency telephone servicecharges?
In my opinion, the answer to this question is "yes," subject to the condition that the providers had no obligation to pursue legal collection efforts in the case of delinquencies, instead being required only to report such delinquencies to the affected political subdivisions.
The Arkansas Public Safety Communications Act of 1985, A.C.A. § 12-10-301
through-324 (Repl. 2003 Supp. 2007), sets forth the conditions for the *Page 2 
provision of emergency 911 services. Subsection 12-10-303(7) of the Code provides:
 (A) "Commercial mobile radio service" or "CMRS" means commercial mobile service under § 3(27) and 332(d), Federal Telecommunications Act of 1996, 47 U.S.C. § 151
et seq., Federal Communications Commission rules, and the Omnibus Budget Reconciliation Act of 1993.
 (B)(i) "Commercial mobile radio service" or "CMRS" includes any wireless two-way communication device, including radio-telephone communications used in cellular telephone service, personal communication service, or the functional and competitive or functional or competitive equivalent of a radio-telephone communications line used in cellular telephone service, a personal communication service, or a network radio access line.
 (ii) "Commercial mobile radio service" or "CMRS" does not include services whose customers do not have access to 911 or a 911-like service, a communication channel suitable only for data transmission, a wireless roaming service or other nonlocal radio access line service, or a private telecommunications system[.]
In my opinion, what you term "prepaid wireless telephone service" qualifies as CMRS as defined above.
Section 12-10-318 provides for the imposition of service charges for CMRS. Section 12-10-320 sets forth the duties of CMRS providers to collect and to remit service charges to the applicable political subdivisions. Specifically, this statute provides in pertinent part:
 (a) The duty of the service supplier to collect any service charge shall commence upon the date of its implementation, which date shall be specified in the resolution calling the election.
 (b)(1) The service supplier shall have no obligation to take any legal action to enforce the collection of any emergency telephone service charge. *Page 3 
 (2) However, the service supplier shall annually provide the governing authority of the political subdivision with a list of the amount uncollected, together with the names and addresses of those service users who carry a balance that can be determined by the service supplier to be nonpayment of such service charge.
 (3) The service charge shall be collected at the same time as the tariff rate in accordance with the regular billing practice of the service supplier.
 (4) Good faith compliance by the service supplier with this provision shall constitute a complete defense for the service supplier to any legal action or claim which may result from the service supplier's determination of nonpayment and the identification of service users in connection therewith.
 (c)(1) The amounts collected by the service supplier attributable to any emergency telephone service charge shall be due quarterly. The amount of service charge collected on one (1) calendar quarter by the service supplier shall be remitted to the political subdivision no later than sixty (60) days after the close of a calendar quarter.
 (2) A return, in such form as the governing authority of the political subdivision and the service supplier agree upon, shall be filed with the political subdivision, together with a remittance of the amount of service collected payable to the political subdivision.
 (3) The service supplier shall be entitled to retain as an administrative fee an amount equal to one percent (1%) from the gross receipts to be remitted to the political subdivision.
 (4) The service supplier shall maintain records of the amount of the service charge collected for a period of at least two (2) years from date of collection. *Page 4 
 (5) The governing authority may, at its expense, require an annual audit of the service supplier's books and records with respect to the collection and remittance of the service charge.
Specifically with respect to your question, I find it significant that subsection (a) of this statute imposes a "duty" upon the service supplier to collect any service charge due. The statute does not carve out an exception for "prepaid" services. Subsection (c)(1) further requires the provider on a quarterly basis to remit the amounts collected to the affected political subdivision. Although subsection (b)(1) absolves the provider of any obligation to pursue legal collection efforts in case of delinquencies, subsection (b)(2) obligates the provider to inform the affected political subdivision of such delinquencies. It would appear, then, that a service supplier is at the very least required to attempt to collect and remit service charges. However, its obligations in this regard apparently end once it has reported delinquencies to the affected political subdivision.
Question 2: If the answer to question 1 is "no," is there a statute oflimitations regarding how far back a carrier can reach to request arefund?
This question is moot in light of my response to your previous question.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General *Page 1